IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BRIDGET RASHAW and<br>MATTHEW HUTCHINSON, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| vs. | ) | Case No. 11-0105-CV-W-ODS |
| UNITED CONSUMERS CREDIT UNION, | )<br>)<br>) | |
| Defendant. | ) | |

## ORDER AND OPINION GRANTING DEFENDANT'S MOTION TO DISMISS

Pending is Defendant's Motion to Dismiss. For the following reasons, the motion is granted.

## I. BACKGROUND

Plaintiffs allege they borrowed money to finance the purchase of automobiles pursuant to a program under which the loans were made or arranged by a company called Centrix. The loans were ultimately purchased by Defendant, but Centrix continued servicing the loans on Defendant's behalf as its agent. E.g., Complaint, ¶¶' 10-11, 31, 52. "In connection with each of these loans, [Defendant] took a security interest in the . . . motor vehicles and was reflected as the secured party and lienholder . . . ." Complaint, ¶ 5. Plaintiffs' vehicles were repossessed for nonpayment and subsequently sold. However, Plaintiffs allege the pre-sale notifications sent to them lacked information required by Missouri's codified version of the Uniform Commercial Code. E.g., Complaint, ¶¶ 15-17, 54. At some point, Defendant became aware that the notices Centrix sent on Defendant's behalf did not comply with the UCC and sent letters to borrowers whose cars had been repossessed. These letters allegedly contained a series of false representations and omissions. Complaint, ¶¶ 18-19.

Plaintiff Bridget Rashaw's car was repossessed on or about December 20, 2004. Plaintiff Matthew Hutchinson's car was repossessed on or about January 10, 2005.

Both received the pre-sale notification on or about the same date their cars were repossessed. Complaint, ¶¶ 27-28. Plaintiffs filed this suit in state court on November 24, 2010, alleging three causes of action. Count I alleges violations of the UCC, specifically sections 400.9-611 through 400.9-614 of the Revised Missouri Statutes. Complaint, ¶¶ 62-65. Count I seeks the relief permitted by section 400.9-625. Complaint, ¶ 68. Count II asserts violations of the Missouri Merchandising Practices Act ("MMPA"). The factual predicates for Count II include (1) material omissions made when the loan was made, (2) the use of pre-sale notifications that violated the UCC, and (3) the use of misleading communications once the UCC "violations" were discovered. Complaint, ¶¶ 77, 83. Count III asserts a claim for conversion.

## II. DISCUSSION

The liberal pleading standard created by the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." Stodghill v. Wellston School Dist., 512 F.3d 472, 476 (8th Cir. 2008).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

2

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009).[1]

### A. Count I

Defendant contends Count I is time-barred. The Court holds that the Missouri Supreme Court would agree, so the claim must be dismissed.[2]

Defendant argues the applicable statute of limitation for violations of section 400.9-625 is section 516.120(2), which requires suit to be brought within five years of accrual for any "action upon a liability created by a statute other than a penalty or forfeiture." Plaintiffs argue the applicable statute of limitation is found in section 516.420, which provides as follows:

---

[1] The Court is limited to a review of the Complaint; the only items outside the Complaint that may be considered without converting the motion to one seeking relief pursuant to Rule 56 of the Federal Rules of Civil Procedure are (1) exhibits attached to the Complaint, and (2) materials necessarily embraced by the Complaint. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 (8th Cir. 2003). Defendant has attached materials to its motion, including affidavits. The Court declares that it has not reviewed these materials (other than copies of judicial opinions), so there is no need to convert the motion to one arising under Rule 56.

[2] "[T]he possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Jessie v. Potter, 516 F.3d 709, 713 n.2 (8th Cir. 2008).

None of the provisions of sections 516.380 to 516.420[3] shall apply to suits against moneyed corporations . . . to recover any penalty or forfeiture imposed, or to enforce any liability created by the act of incorporation or any other law; but all such suits shall be brought within six years after the discovery by the aggrieved party of the facts upon which such penalty or forfeiture attached, or by which such liability was created.

The focus is whether section 400.9-625 imposes a penalty. If it does, then section 512.120 is (by its own terms) inapplicable. In such a case, the limitation period would ordinarily be prescribed by sections 516.380 through 516.400 and, if the defendant is a "moneyed corporation," those provisions would be replaced by the six-year period prescribed by section 516.420.[4] In ascertaining whether the UCC provision constitutes a penal statute, the Court is bound by decisions of the Missouri Supreme Court. "If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 390 (8th Cir. 2010).

The question at hand is not simply "is section 400.9-0625 a penal statute?" The real question is: in the absence of section 516.420, which statute of limitation would apply? It is a statutory cause of action, so section 516.120(2) would seem to apply – unless the liability is "a penalty or forfeiture." The Missouri Supreme Court has not indicated which statute of limitations applies to a claim under section 400.9-625, which is unsurprising given that the UCC is generally related to contractual matters. It is unusual to think of the Uniform Commercial Code as providing for penalties. Inasmuch as the UCC establishes remedies, rights, and other provisions related to contracts, one

---

[3]This is not a typographical error: section 516.420 includes itself within the range of statutes that do not apply in the circumstances described in that section. No party suggests (and the Court does not believe) that this language should be taken literally as it would completely deprive section 516.420 of all meaning.

[4]Defendant also argues that it is not a "moneyed corporation" within the meaning of section 516.420. The Court disagrees, but there is no need to delve into this matter in light of the Court's decision.

would expect any causes of action created thereunder to be treated similarly to contract actions.

More specifically, the statute at issue also does not appear to be penal in nature. Depending on the violation in question, section 400.9-625 allows for, *inter alia*, actual damages, return of the "credit service charge . . . or the time-price differential," statutory damages in the amount of $500, and a defense to any effort by the creditor to recover a deficiency. It does not allow for punitive damages. Plaintiff characterizes the statutory damages as a penalty, but this is not clear from the statute. Some statutory damages are penalties, while others are simply a form of liquidated damages. Nothing in section 400.9-625 suggests it is penal in nature.

Decisions from other jurisdictions also provide guidance. In interpreting its version of the predecessor to 9-625,[5] the Alabama Supreme Court declined to apply the limitation period applicable to penal statutes and applied the longer period applicable to contract actions. The court explained that the UCC provisions became part of the parties' contract so the suit "for damages for violation of these requirements is, in essence, a suit for breach of contract." Weaver v. American Nat'l Bank, 452 So.2d 469, 473 (Ala. 1984). Unlike Missouri, it appears that Alabama did not have a specific statute of limitations for actions under non-penal statutes, but the salient point is that the Alabama Supreme Court did not apply the limitation period applicable to penalties. Similarly, the Michigan Court of Appeals held that the applicable limitation period was the "catchall" provision of six years, rather than the shorter period allowed for conversion claims. State Bank of Standish v. Keysor, 419 N.W.2d 752, 754 (Mich. Ct. App. 1988). The Southern District of Ohio, interpreting Ohio's codification of section 9-625, also held that the limitation period for penal statutes did not apply. Jenkins v. Hyundai Motor Financing Co., 389 F. Supp. 2d 961, 972 (S.D. Ohio 2005).

Crediting Plaintiff's argument and holding that section 400.9-625 is penal means that, in the absence of a "moneyed corporation," the applicable limitation period is one

---

[5]Section 9-625 of the UCC was adopted in 2000; its predecessor was section 9-507. Some of the decisions cited interpret the predecessor provision.

5

to three years. This is inconsistent with the longer limitation period normally permitted for contract and statutory actions and is a further indication that Plaintiffs' interpretation would not be adopted by the Missouri Supreme Court. Plaintiffs' position gives them a longer limitation period, but would do so for other plaintiffs only if their defendant happened to be a moneyed corporation. Other plaintiffs dealing with non-moneyed corporations would have a less-favorable one to three years limitation period, and this outcome would not be endorsed by the Missouri Supreme Court.

Plaintiffs advance several arguments, none of which the Court finds persuasive. First, they rely on a series of other statutes relating to credit unions or financial transactions, including those found in Chapter 408. The obvious flaw in Plaintiffs' reliance is that they do not assert any claims predicated on Chapter 408 – or any statute other than the UCC. Second, Plaintiffs contend that all statutory claims against moneyed corporations – including those that are not penalties – are governed by section 516.420. They base this interpretation on a phrase from that statute stating that it applies to "*any liability created* by the act of incorporation or *any other law*" (emphasis supplied) and the Missouri Court of Appeals' decision in Schwartz v. Bann-Cor Mortg., 197 S.W.3d 168, 178 (Mo. Ct. App. 2006). Schwartz did not hold that section 516.420 applies to non-penal claims against moneyed corporations; in fact, its discussion of section 516.420 followed the court's determination that the statute in question was penal in nature. Thus, Shwartz had no occasion to consider whether section 516.420 applied to non-penal statutes. More importantly, the clear language of the statute dictates a contrary conclusion. The beginning of the statute establishes that it supplants sections 516.380 to 516.420 when the defendant is a moneyed corporation and in the place of those statutes establishes a limitation period of six years. However, the limitation period for Plaintiffs' claim is established by section 516.120 – not one of the statutes supplanted by section 516.420. Cf. Glen v. Fairway Independent Mortg. Corp., 265 F.R.D. 474, 476-77 (E.D. Mo. 2010). Plaintiffs also exert considerable effort to identify situations in which various courts have described various parts of the UCC generally, or section 9-625 specifically, as a "penalty." The problem is that the word is amenable to multiple definitions in a variety of contexts. The word "is an elastic term

6

with many different shades of meaning." Julian v. Burrus, 600 S.W.2d 133, 141 (Mo. Ct. App. 1980) (quotation omitted). The critical inquiry is: does section 400.9-625 constitute a "penalty or forfeiture" within the meaning of section 516.420. Labels attached outside this (or a similar) context have little value.[6]

Finally, Plaintiffs present several arguments contending there are unresolved issues that preclude final consideration of Defendant's argument. As noted earlier in footnote two, the defense of untimeliness may be considered under Rule 12(b)(6) so long as the Complaint establishes the defense. Here, the Complaint establishes that Plaintiffs' cars were repossessed and they received the relevant notices more than five years but less than six years before suit was filed. A cause of action accrues "when the damage resulting . . . is sustained and is capable of ascertainment . . . ." Mo. Rev. Stat. § 516.100. This means that not only must the damage have occurred, but it must be capable of ascertainment. E.g., Powel v. Chaminade Coll. Preparatory, Inc., 197 S.W.3d 576, 582 (Mo. 2006) (en banc). In a claim alleging property was wrongfully taken and inadequate notice was provided, damages were first capable of ascertainment when the plaintiff knew the car was taken and the notice was received. Cf. Chemical Workers Basic Union v. Arnold Savings Bank, 411 S.W.2d 159, 165 (Mo. 1967) (en banc). This is an objective inquiry: "[t]he issue is not when the injury occurred, or when plaintiff subjectively learned of the wrongful conduct and that it caused his or her injury, but when a reasonable person would have been put on notice that an injury and substantial damages may have occurred and would have undertaken to ascertain the extent of the damages." Id. at 584. These facts are provided in the Complaint, so further development of the Record is not required.

---

[6]This is one of the reasons the Court rejects Plaintiffs' argument that Defendant is judicially estopped from disputing that section 400.9-625 is a penal statute. Defendant never took a contrary position in the context of dispute or any other circumstance that renders its current position unfair. Defendant did not try to persuade this (or any other court) that the statute is penal. The circumstances under which a court might exercise its discretion to apply judicial estoppel are simply not present. See Capella Univ., Inc. v. Executive Risk Specialty Ins. Co., 617 F.3d 1040, 1051 (8th Cir. 2010).

Plaintiffs nonetheless insist that facts have been alleged that might cause the Court to decide the claims accrued some time after their cars were repossessed, that Defendant should be equitably estopped from asserting the defense, or that the limitation period was equitably tolled. Plaintiffs have not identified all of these allegations, so the Court will focus on the arguments actually presented. Plaintiffs point to the communications sent after the cars were sold (apparently the same communications that form the basis for Count III) and contend these make the original pre-sale communications even more unreasonable than they were at first. The Court rejects this position. According to Plaintiffs, the pre-sale notices violated the UCC when they were sent and subsequent communications were not necessary to establish the violation. Plaintiffs also contend negative credit reports constitute additional violations because they arise from the original, improper sale and notice. However, (1) Plaintiffs' loss of their cars and (2) the language contained in (and omitted from) the pre-sale notices were capable of ascertainment immediately. The existence of additional damages did not re-start the limitation period.

Missouri's codification of section 9-625 of the UCC is not a penal statute. Claims seeking relief under that provision must be filed within the time frame dictated by section 516.120, so section 516.420 does not apply. Plaintiffs' claims were filed more than five years after they accrued, so they must be dismissed.

## B. Count II

The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise . . . ." Mo. Rev. Stat. § 407.020.1. However, these provisions do not apply to

> Any institution, company, or entity that is subject to chartering, licensing or regulation by . . . the director of the division of credit unions under chapter 370, RSMo, or director of the division of finance under chapters 361 to 369, RSMo, or chapter 371, RSMo, unless such directors specifically

8

>authorize the attorney general to implement the powers of this chapter or such powers are provided to either the attorney general or a private citizen by statute.

Id. § 407.020.2(2).

Plaintiffs do not deny that Defendant is a credit union, nor do they deny that it is chartered in Missouri and subject to regulation in Missouri. Indeed, Plaintiffs affirmatively alleged these facts. Complaint, ¶¶ 29-30. Instead, Plaintiffs contend that the exclusion for entities regulated by the Missouri Division of Credit Unions is inapplicable because Defendant is also regulated by the National Credit Union Association. The obvious problem with this argument is that the statute does not say the exclusion applies only if the Missouri Division of Credit Unions is the exclusive governmental agency charged with the entity's oversight. Plaintiff's related assertion – that the exclusion "is not applicable to entities whose regulation under federal law is at the heart of the lawsuit" – suffers from the same flaw: it is not supported by the statute.

Plaintiffs' second argument is that the statute does not apply because private citizens are permitted to sue, as provided in section 407.025. This argument is predicated on the exclusion's last clause, which states that the exclusion does not apply if the ability to implement the powers of section 407.020 is "provided to either the attorney general or a private citizen by statute." This argument is circular: section 407.025 gives private citizens the powers granted by section 407.020, but section 407.020 does not apply to credit unions. For Plaintiffs' argument to be credited, what must be granted is the power to enforce section 407.020 *against credit unions*. To hold otherwise would eliminate the exclusion.

Plaintiffs also argue that other statutes allow citizens to apply the MMPA to credit unions. They cite a variety of statutes creating causes of action, but none permit the use of the MMPA. The mere existence of *other* statutory causes of action should not be interpreted as a silent grant of power to apply the MMPA to credit unions over the explicit exclusion contained in section 407.020. Plaintiffs may be entitled to pursue causes of action under those "other statutes," but they have not attempted to do so. As laudable as the MMPA is, and as desirable as it may be to allow for private attorney

9

generals to enforce its provisions, the Missouri legislature has dictated that the MMPA generally does not apply to credit unions.

Plaintiffs' final argument is that Defendant's interpretation must be rejected because it causes the MMPA to violate the Missouri Constitution. Article III, section 40, subsection 28 ("section 40") prohibits the Missouri General Assembly from "granting to any corporation, association or individual any special or exclusive right, privilege or immunity . . . ." The argument borders on the frivolous. The MMPA does not grant credit unions a special right, privilege, or immunity: it merely dictates that actions against credit unions (and other similar entities that are heavily regulated) are not subject to the MMPA. The distinction is reasonable and does not create a special law. See Blaske v. Smith & Entzeroth, Inc., 821 S.W.2d 822, 831 (Mo. 1991) (en banc) (discussing when a law violates section 40). Plaintiffs' second constitutional argument is frivolous. It is based on Article III, section 44 of the Missouri Constitution, which requires that "rates of interest fixed by law shall be applicable generally and to all lenders without regard to the type or classification of their business." Plaintiffs contend that exempting certain financial institutions from the MMPA permits those financial institutions to charge different rates of interest than other businesses. The MMPA has nothing to do with interest rates, and laws establishing permissible interest rates do not rely upon the MMPA for enforcement. Individuals are free to assert claims premised on unlawful interest rates without relying on the MMPA.

The Missouri Legislature has decreed that the MMPA does not apply to credit unions regulated by the Missouri Division of Credit Unions. Defendant is such a credit union, so Plaintiffs' MMPA claim must be dismissed.

## C. Count III

Defendant contends Plaintiffs' claim for conversion is time-barred, and the Court agrees. There is little doubt that the applicable statute of limitation is section 516.120, which requires suit to be brought within five years. E.g., Gaydos v. Imhoff, 245 S.W.3d 303, 306 (Mo. Ct. App. 2008) (applying section 516.120 to hold that "all actions upon

10

contracts . . . including actions for conversion, must be brought within a five-year statute of limitations."); Hamdan v. Board of Police Commissioners, 37 S.W.3d 397, 399 (Mo. Ct. App. 2001) (same). As stated earlier, section 516.420 does not supplant the "normal" limitation period if that period is set by section 516.120. Count III must be dismissed.

## III. CONCLUSION

Plaintiffs' Complaint establishes that Counts I and III were filed more than five years after the claims accrued, so they must be dismissed. Plaintiffs' Complaint also establishes that Defendant is a credit union subject to regulation by the Missouri Division of Credit Unions. The Missouri Merchandising Practices Act does not apply to such credit unions, so Count II must be dismissed.

IT IS SO ORDERED.

DATE: May 26, 2011

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT